UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| CHERYL VANNURDEN, Plaintiff, | : | |
| v. | : | CA 07-445 S |
| SOCIAL SECURITY ADMINISTRATION, Defendant. | : | |

**REPORT AND RECOMMENDATION**

David L. Martin, United States Magistrate Judge

Before the Court is the second request for reconsideration (Document ("Doc.") #9) ("Second Motion for Reconsideration") of the denial of the Application to Proceed without Prepayment of Fees and Affidavit (Doc. #2) ("Application") filed by Plaintiff Cheryl VanNurden ("Plaintiff"). The Second Motion for Reconsideration has been referred to me for determination. However, because I have concluded that the Second Motion for Reconsideration and the Application should be denied, they are addressed by way of this Report and Recommendation. See Lister v. Dep't of Treasury, 408 F.3d 1309, 1312 (10th Cir. 2005) (explaining that because denial of a motion to proceed in forma pauperis is the functional equivalent of an involuntary dismissal, a magistrate judge should issue a report and recommendation for a final decision by the district court). For the reasons stated herein, I recommend that the Second Motion for Reconsideration and the Application be denied and that Plaintiff's Second Amended Complaint (Doc. #8) be dismissed.

## Facts and Travel

Plaintiff filed her Complaint (Doc. #1) and Application on December 6, 2007. See Docket. Although the Complaint appeared to allege that Plaintiff had been wrongfully denied Social Security benefits in the amount of $196,308.00, see Complaint, the pleading was so unclear that the Court was unable to understand it, see Order Denying without Prejudice Application to Proceed in Forma Pauperis (Doc. #3) ("Order of 12/10/07") at 1. Accordingly, in a written order which identified some of the reasons why the Complaint was unclear,[1] the Court denied the Application without prejudice and ordered Plaintiff to file within fourteen days an amended complaint which complied with Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 8(a). See id. at 2. The Order of 12/10/07 directed Plaintiff to state her claim more clearly and to address the matters which the Court had identified as contributing to the lack of clarity.[2] Id.

Plaintiff failed to file an amended complaint within the fourteen days required by the Order of 12/10/07. On February 13, 2008, District Judge William E. Smith issued a Show Cause Order (Doc. #4), directing Plaintiff to show cause, in writing, on or before March 3, 2008, why the case should not be dismissed for lack of prosecution, namely Plaintiff's failure to make service

[1] In the Order of 12/10/07, the Court noted that the Complaint alleged: 1) that Plaintiff had received a favorable decision from the Social Security Administration in 2006 but she was seeking benefits back to 2002; 2) that a new application for benefits had been filed without her knowledge or consent, but she did not state when or where this application had been filed; and 3) that she was denied the opportunity to earn the two credits needed for benefits, but she did not explain the type of credits to which she was referring, who denied her the opportunity, how it was denied, and when this occurred. Order of 12/10/07 at 1.

[2] See n.1.

within 120 days after filing the Complaint as required by Fed. R. Civ. P. 4(m). See Show Cause Order. The Show Cause Order cautioned that "[f]ailure to comply will result in dismissal." Id.

On February 28, 2008, Plaintiff filed an Amended Complaint (Doc. #5) and a request for reconsideration of the denial of her Application, see Request for Reconsideration of Waiver to Proceed without Prepayment (Doc. #6) ("First Motion for Reconsideration"). In her First Motion for Reconsideration, Plaintiff stated that she "was not in possession of the [Order of 12/10/07] until January 18, 2008," id., and that, therefore, it was impossible for her to comply with that order within the allotted time, see id. Plaintiff also asked that her case not be dismissed for lack of prosecution. See id.

After reviewing Plaintiff's Amended Complaint and First Motion for Reconsideration, the Court issued an order on March 4, 2008, which granted in part Plaintiff's Motion for Reconsideration and directed her to file a seconded amended complaint. See Order Granting in Part Motion for Reconsideration and Requiring Plaintiff to File a Second Amended Complaint (Doc. #7) ("Order of 3/4/08"). The Order of 3/4/08 explained why Plaintiff's Amended Complaint was still deficient:

> Although the Amended Complaint contains a chronological account of Plaintiff's dealings with the Social Security Administration between 2002 and 2007, the Court is still unable to understand what Plaintiff's claim is. If Plaintiff is attempting to obtain judicial review of the denial of an application for Social Security benefits, she has not clearly identified which application is at issue and the date of the "final decision of the Commissioner of Social Security ...," 42 U.S.C. § 405(g), relative to that application. The Amended Complaint states that Plaintiff filed applications for benefits on June 13, 2002, and April 5, 2005, but also states that she received a favorable

> decision on February 13, 2006, from Administrative Law Judge ("ALJ") Hugh Atkins. See Amended Complaint ¶¶ 1, 11, 15. Thus, it is unclear what "final decision" Plaintiff is seeking to have this Court review.
>
> If Plaintiff is seeking relief other than (or in addition to) judicial review of the denial of Social Security benefits, she must plainly state what that relief is and why she believes that she is entitled to it. The Court notes that Plaintiff appears to complain about applications for Social Security benefits being filed without her consent, see Amended Complaint ¶¶ 17, 23, 25, but she does not explain how the filing of such applications have harmed her or otherwise entitle her to the damages which she seeks. Plaintiff also appears to indicate that she does not know who filed these applications, only that she did not file them. Thus, the basis for any complaint against the Social Security Administration in connection with such unauthorized applications is unclear.

Order of 3/4/08 at 2-3 (footnote omitted).

In a footnote, the Court also explained that:

> This Court's jurisdiction to review the denial of Social Security benefits is governed by 42 U.S.C. § 405(g). Pursuant to that statute, an individual may obtain judicial review of a denial of benefits by commencing a civil action in the district court within sixty days of the "final decision of the Commissioner of Social Security made after a hearing to which [s]he was a party ...." 42 U.S.C. § 405(g). In most cases, the date of the final decision of the Commissioner is the date the Appeals Council denies review of the administrative law judge's decision. See Sims v. Apfel, 530 U.S. 103, 107, 120 S.Ct. 2080 (2000)(stating that where the Appeals "Council denies the request for review, the ALJ's opinion becomes the final decision").

Id. at 2 n.2 (alterations in original).

Lastly, the Order of 3/4/08 specified that the Second Amended Complaint shall:

> 1. Be a complete document in and of itself which may be fully understood without referring to either the Complaint or the Amended Complaint;
> 2. State plainly whether Plaintiff is seeking judicial review of the denial of Social Security benefits;
> 3. Identify the type of benefits which are at issue (e.g., Disability Insurance Benefits ("DIB") or Supplemental Security Income ("SSI");
> 4. Identify the date of the application which is at issue and the date of the "final decision of the Commissioner ...," 42 U.S.C. § 405(g), relative to that application; and
> 5. Identify the time period for which benefits are at issue (from what date to what date).
>
> In addition, if Plaintiff is seeking relief other than (or in addition to) judicial review of the denial of Social Security benefits, the Second Amended Complaint must plainly state what that relief is and why Plaintiff believes that she is entitled to it.

Order of 3/4/08 at 3-4.

On March 13, 2008, Plaintiff filed a Second Amended Complaint (Doc. #8). On March 14, she filed the instant Second Motion for Reconsideration (Doc. #9) which again requested that the Court grant her Application. Because the Court finds that the Second Amended Complaint fails to satisfy the requirements of Fed. R. Civ. P. 8(a)[3] and the Court's Order of 3/4/08, it is

---

[3] Federal Rule of Civil Procedure 8(a) provides:

> (a) Claim for Relief. A pleading that states a claim for relief must contain:
>
> (1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support;
>
> (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and
>
> (3) a demand for the relief sought, which may include

reproduced below in its entirety (except for the caption, title, signature, and brief postscript):

> My case should not have gone any further than the application filed in June of 2002, but for the multiple errors made on the part of the Social Security Administration. My chances for collecting Disability Insurance Benefits at any time now or in the future are impossible. With that said, there is not one application, one signature, (or lack thereof), that is in question. My lawsuit involves any and all communication, written and oral in its entirety from 2002 to 2007, between Myself, Social Security Administration, and the names contained in the first amended complaint. Their incompetence, malicious intent to deceive me, with improper procedures from the first application in 2002 to the informal decision by a Judge in 2007, (according to Patrick LeFoley as stated to me by Mr. Ceprano) not to reconsider opening my claim, is unacceptable and Social Security Administration needs to be held accountable for the harm to me that is mentioned above, the opportunity and inability to earn the work credits needed for Disability Insurance Benefits, no medicare assistance available to me, a severe reduction in retirement benefits. I am disabled, but not entitled to anything because of their incompetence, again I respectfully await your answer to this second complaint, with a demand for a jury still in place, also, my actual damages (2004 to age 62 w/child) and my punitive damages remain as stated in the first amended complaint.

Second Amended Complaint.

In a short postscript to the above, Plaintiff indicated that she was enclosing documents "that are explained in brief in the first amended complaint. [T]hese should give you a better understanding of my case against Social Security." Id. The enclosure to which Plaintiff refers consists of some sixty pages

---

relief in the alternative or different types of relief.

Fed. R. Civ. P. 8(a).

of documents, mainly from the Social Security Administration ("SSA"), which are dated June of 2002 to April of 2007.

**Law**

A complaint drafted by a pro se litigant is held to a less stringent standard than a complaint drafted by a lawyer. See Haines v. Kerner, 404 U.S. 519, 520, 92 S.Ct. 594, 596 (1972). It is to be "read ... with an extra degree of solicitude." Rodi v. Ventetuolo, 941 F.2d 22, 23 (1st Cir. 1991). A court is required to construe liberally a pro se complaint, see Strahan v. Coxe, 127 F.3d 155, 158 n.1 (1st Cir. 1997); Watson v. Caton, 984 F.2d 537, 539 (1st Cir. 1993), and may grant a motion to dismiss "only if a plaintiff cannot prove any set of facts entitling him or her to relief," Ahmed v. Rosenblatt, 118 F.3d 886, 890 (1st Cir. 1997). At the same time, a plaintiff's pro se status does not excuse her from complying with procedural rules, see Instituto de Educacion Universal Corp. v. U.S. Dep't of Educ., 209 F.3d 18, 24 n.4 (1st Cir. 2000), or clearly communicated court orders, see Downs v. Westphal, 78 F.3d 1252, 1257 (7th Cir. 1996)("being a pro se litigant does not give a party unbridled license to disregard clearly communicated court orders").

**Discussion**

Despite the Court's efforts to guide Plaintiff, see Order of 12/10/07; Order of 3/4/08, Plaintiff has again failed to file a complaint which complies with Fed. R. Civ. P. 8(a). She has also disregarded the Court's specific instruction that the Second Amended Complaint "[b]e a complete document in and of itself which may be fully understood without referring to either the Complaint or the Amended Complaint." Order of 3/4/08 at 3. Contrary to this instruction, Plaintiff's Second Amended Complaint three times refers to information stated "in the first amended complaint." Second Amended Complaint.

Plaintiff's submission of sixty pages of documents, while no doubt well-intended, is problematic and does not cure the deficiencies of her Second Amended Complaint. The purpose of Rule 8(a)'s requirement that the complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), is to enable the Court and the defendant to understand the nature and basis for Plaintiff's claim without having to read through sixty pages of documents.

As best the Court can determine from all of Plaintiff's filings and submissions, it appears that in June 2002 Plaintiff applied for Supplemental Security Income ("SSI") benefits and/or Disability Insurance Benefits ("DIB"). Her application(s) were denied, presumably at both the initial and reconsideration stages of review. On February 11, 2005, Administrative Law Judge ("ALJ") Hugh Atkins issued an unfavorable decision regarding Plaintiff's June 13, 2002, application for SSI. Plaintiff filed another application for SSI on or about March 3, 2005, and that application was denied on April 12, 2005, at the initial consideration stage.

Meanwhile, Plaintiff appears to have sought review of ALJ Atkins' decision. On October 13, 2005, the Appeals Council remanded the matter back to the ALJ because a psychological evaluation of Plaintiff had not been made available to Plaintiff and her counsel. On February 13, 2006, ALJ Atkins issued a new decision, finding that Plaintiff had been disabled since June 4, 2002, and that her disability had continued through the date of the decision. However, the decision also stated that:

> the Social Security Administration must also determine whether the claimant meets the income and resources and other eligibility requirements for Supplemental Security Income payments, and if the claimant is eligible, the amount and the month(s) for which the claimant will

> receive payment. The claimant will receive a notice from another office of the Social Security Administration when that office makes those determinations.

Decision, ALJ Atkins, Feb. 13, 2006, at 5.

In a letter dated March 4, 2006, the SSA notified Plaintiff that she did not qualify for DIB because she had "not worked long enough under Social Security." Letter from SSA to Plaintiff of 3/4/06. On March 6, 2006, the SSA advised Plaintiff that she was eligible to receive SSI payments in varying amounts for the period from July 1, 2002, through February 28, 2005, but no payments for the period after March 1, 2005. However, a March 7, 2006, letter advised Plaintiff that the SSI payments for the period July 1, 2002, through February 28, 2005, were being changed to zero. The letter explained that because of Plaintiff's income she was not eligible to receive SSI payments "for June 2002 on." Letter from McMahon to Plaintiff of 3/7/06.

It appears that Plaintiff filed a request for reconsideration of this decision on April 26, 2006. The SSA responded in a May 5, 2006, letter. As this letter is helpful in understanding the claim which Plaintiff is attempting to bring in this Court, the first page is reproduced in full below:[4]

> You stated on your request for reconsideration that you had received a favorable decision from the [ALJ] four years after you originally filed and that we suddenly decided you did not have enough quarters of coverage. You are correct that the Judge had found you disabled. However, there are certain criteria that also must be met to be paid benefits under both Social Security and [SSI]. For Social Security Disability benefits-you needed to work 5 out of the last 10 years before you became

[4] The second page of the May 5, 2006, letter from the SSA does not appear to be among the documents which Plaintiff submitted with the Second Amended Complaint.

> disabled. In your case, you became disabled as of 06/04/02. When a person works under Social Security, 4 quarters of coverage can be earned every year to become insured for both retirement and disability. You needed to earn 20 quarters of coverage in the 10--year period before you became disabled. You had only earned 18 quarters of coverage. This is why you cannot get disability benefits. We are not saying you are not disabled[;] you just do not meet the "non-disability" requirements.
>
> As for the SSI, your husband's income made you ineligible for SSI during the entire initial claim process and appeal process. SSI is based on income and resources. Your husband's income was too high to enable us to pay you this additional benefit.
>
> The [ALJ] did conclude that you were disabled. We have not changed that determination. That decision stands. The decision that you are not insured for disability under Social Security and that you have too much income for [SSI] is based on the laws and we cannot change that decision either. We are not minimizing your condition in the least but we cannot change the laws under which we determine a person's eligibility for Social Security disability and [SSI] disability.

Letter from SSA to Plaintiff of 5/5/06.

In addition to being denied benefits, Plaintiff also appears to complain about applications for Social Security benefits being filed without her consent or knowledge.[5] Plaintiff specifically cites an application for SSI for herself dated February 23, 2006 (which is included among the sixty documents submitted), and an application for Social Security benefits for her sixteen year old daughter, Tamara (the denial letter for which is included in the documents). Regarding the latter application, Plaintiff has submitted a letter from the SSA dated April 15, 2007, stating that Tamara does not qualify for benefits. Plaintiff further

---

[5] See Amended Complaint ¶¶ 17, 23-25.

appears to complain that on November 16, 2006, she received a letter from the Pawtucket office of the SSA denying an application which was allegedly filed by telephone on November 9, 2006, but Plaintiff seems to deny making this application.[6] Lastly, Plaintiff appears to complain about an informal decision by an ALJ in late January or early February 2007 not to reopen her case.[7]

Thus, construing Plaintiff's pro se filings liberally, it appears that Plaintiff claims that she has been wrongly denied Social Security benefits because of the SSA's "incompetence," Second Amended Complaint, and deceptive and improper procedures, see id. The period encompassed by her claim is from her first application for benefits in 2002 up to and including the informal decision in 2007 by an ALJ not to reopen her case. See id. Plaintiff also complains that the SSA did not tell her about the deficiency in her quarters of coverage until 2006 (four years after she first filed her application).[8] She states that if she had received the letter advising her of this deficiency in 2002 instead of 2006, she could have obtained the two quarters she needed for DIB.[9] Plaintiff seeks actual damages of $143,362.00, see First Amended Complaint ¶ 26, and punitive damages of $25,000,000.00, see id.; see also Complaint.

---

[6] See id. ¶ 23.

[7] In a handwritten chronology included in the sixty documents, Plaintiff states that she was notified on February 6, 2007, by "Mr. Ceprano," apparently an employee at the Pawtucket Office of the SSA, that the "judge will not reopen case ...." The judge is apparently an ALJ.

[8] This information is contained in a February 6, 2007, entry in the chronology referenced in n.7 above.

[9] See n.8.

As explained hereafter, these allegations do not state a claim upon which relief can be granted because Plaintiff's lawsuit is barred by the doctrine of sovereign immunity. Therefore, Plaintiff's Application should be denied and this matter dismissed pursuant to 28 U.S.C. § 1915(e).[10]

As a general matter, sovereign immunity bars suits against the government. Santana-Rosa v. United States, 335 F.3d 39, 41 (1st Cir. 2003); Barrett v. United States, 462 F.3d 28, 36 (1st Cir. 2006)("The United States, as a sovereign, cannot be sued absent an express waiver of its immunity."); Kozera v. Spirito, 723 F.2d 1003, 1007 (1st Cir. 1983)("Sovereign immunity generally bars suits against the United States or its agencies[11] ....") see also United States v. Navajo Nation, 537 U.S. 488, 502, 123 S.Ct. 1079, 1089 (2003)("It is axiomatic that the United States may not be sued without its consent and the existence of consent is a prerequisite for jurisdiction."); Puerto Rico v. United States, 490 F.3d 50, 57 (1st Cir. 2007)("It is long settled law that, as

---

[10] In relevant part, 28 U.S.C. § 1915(e) provides:

> (2) Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that--
> (A) the allegation of poverty is untrue; or
> (B) the action or appeal--
> (i) is frivolous or malicious;
> (ii) fails to state a claim on which relief may be granted; or
> (iii) seeks monetary relief against a defendant who is immune from such relief.

28 U.S.C. § 1915(e)(2).

[11] The Social Security Administration is an agency of the United States. See Oritz v. U.S. Dep't of Health & Human Servs., 70 F.3d 729, 732 n.1 (2nd Cir. 1995)(noting that the Social Security Administration was separated from the U.S. Department of Health and Human Services effective March 31, 1995, "and became an independent agency").

an attribute of sovereign immunity, the United States and its agencies may not be subject to judicial proceedings unless there has been an express waiver of that immunity."). Therefore, the right to sue the United States or one of its agencies is limited to the extent of the pertinent waiver of sovereign immunity. See Singer v. Schweiker, 694 F.2d 616, 617 (9th Cir. 1982); see also Gilbert v. DaGrossa, 756 F.2d 1455, 1460 n.6 (9th Cir. 1985)("A claim for damages against a federal agency is barred by sovereign immunity unless Congress has consented to suit.")(citing Blackmar v. Guerre, 342 U.S. 512, 515, 72 S.Ct. 410, 411 (1952)).

In 42 U.S.C. § 405(g),[12] Congress waived sovereign immunity relative to the SSA by giving federal courts jurisdiction to review and modify or reverse decisions of the Commissioner of Social Security. See Jackson v. Astrue, 506 F.3d 1349, 1353 (11th Cir. 2007). Section 405(g) is the sole basis for a district court to exercise jurisdiction in Social Security cases. See Bartlett v. Schweiker, 719 F.2d 1059, 1060 (10th Cir. 1983); Rasdall v. Astrue, No. 06-2454-JWL, 2008 WL 695770, at *4 (D. Kan. Mar. 13, 2008)("The sole basis for jurisdiction in Social Security cases arises under 42 U.S.C. § 405(g)."); see also Jackson, 506 F.3d at 1353 ("the remedies outlined in that statute are the exclusive source of federal court jurisdiction over cases

---

[12] 42 U.S.C. 405(g) provides in relevant part:

> (g) Judicial review
>
> Any individual, **after any final decision of the Commissioner of Social Security made after a hearing** to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow.

42 U.S.C. § 405(g) (bold added).

involving SSI"). Indeed, Section § 405(h) explicitly states that: "No findings of fact or decision of the Commissioner of Social Security shall be reviewed by any person, tribunal, or governmental agency except as herein provided." 42 U.S.C. § 405(h);[13] see also Binder & Binder PC v. Barnhart, 399 F.3d 128, 130 (2nd Cir. 2005)("Section 405(h) of the Social Security Act ... ordinarily bars federal question jurisdiction over suits brought under that Act."); Williams v. Astrue, No. 07-4023-JAR, 2008 WL 782619 (D. Kan. Mar. 20, 2008), at *4 ("42 U.S.C. § 405(h) bars federal question jurisdiction in suits challenging denial of claimed Social Security benefits.").

Section 405(g) requires that claims must be presented in the District Court within sixty days of a final decision of the Commissioner. 42 U.S.C. § 405(g); see also Bowen v. New York, 476 U.S. 467, 478, 106 S.Ct. 2022, 2029 (1986)(noting "the requirement embodied in § 405(g) that claims must be presented in the District Court within 60 days of a final decision of the [Commissioner]"); Acierno v. Barnhart, 475 F.3d 77, 82-83 (2nd Cir. 2007)(stating that "Section 405(g) allows an individual to seek judicial review of the Commissioner's decision within 60 days of the date that notice of the decision is mailed to him").

---

[13] 42 U.S.C. § 405(h) provides:

> The findings and decision of the Commissioner of Social Security after a hearing shall be binding upon all individuals who were parties to such hearing. **No findings of fact or decision of the Commissioner of Social Security shall be reviewed by any person, tribunal, or governmental agency except as herein provided.** No action against the United States, the Commissioner of Social Security, or any officer or employee thereof shall be brought under section 1331 or 1346 of Title 28 to recover on any claim arising under this subchapter.

42 U.S.C. § 405(h) (bold added).

The sixty day time limit is a condition on the waiver of sovereign immunity and thus must be strictly construed. See Bowen, 476 U.S. at 479, 106 S.Ct. at 2029; see also Lehman v. Nakshian, 453 U.S. 156, 161, 101 S.Ct. 2698, 2702 (1981) ("[L]imitations and conditions upon which the Government consents to be sued must be strictly observed and exceptions thereto are not to be implied.")

In addition, section 405(g) limits federal judicial review to final decisions of the Commissioner made after a hearing. Califano v. Sanders, 430 U.S. 99, 108, 97 S.Ct. 980, 986 (1977); Rasdall, 2008 WL 695770, at *4; see also Weinberger v. Salfi, 422 U.S. 749, 765, 95 S.Ct. 2457, 2466 (1975)(noting "the literal requirement of § 405(g) that there shall have been a 'final decision of the Secretary made after a hearing'")(quoting prior version of 42 U.S.C. § 405(g)). The final decision requirement is "central to the grant of subject matter jurisdiction." Bartlett, 719 F.2d at 1060 (citing Salfi, 422 U.S. at 764, 95 S.Ct. at 2466).

Here it is clear that to the extent Plaintiff seeks judicial review of the Commissioner's decisions during the period from 2002 to 2007 to deny her applications for DIB and/or SSI, her claims are barred because they are made far beyond the sixty day period permitted by section 405(g). To the extent that Plaintiff seeks judicial review of the Commissioner's decision (as made by an ALJ) not to reopen her case, her claim is additionally barred because "a decision by the Secretary not to reopen a case is not a 'final decision of the Secretary made after hearing,' and is, therefore, not reviewable by federal courts." Rasdall, 2008 WL 695770, at *4 (quoting Sanders, 430 U.S. at 108, 97 S.Ct. at 986). To the extent that Plaintiff seeks monetary damages because of the alleged incompetence and wrongful acts of the SSA

during the period 2002 to 2007, her claims are barred by section 405(h). See Hooker v. U.S. Dep't of Health & Human Servs., 858 F.2d 525, 529 (9th Cir. 1988)(holding that plaintiff's claim for damages due to wrongful termination of social security benefits was barred because of section 405(h)).[14]

**Summary**

By virtue of the doctrine of sovereign immunity, the Government can only be sued with its consent. The SSA is an agency of the Government, and, thus, Plaintiff can only sue the SSA to the extent that Congress has waved sovereign immunity. In 42 U.S.C. § 405(g), Congress has provided a limited waiver of sovereign immunity to allow persons who have been denied Social Security benefits to seek judicial review. However, the review is limited to "final decision[s] of the Commissioner ... made after a hearing ...," 42 U.S.C. § 42(g), and the action must be brought within sixty days of the final decision, see id. Here, the final decision after a hearing in Plaintiff's case occurred

---

[14] In Hooker v. United States Department of Health & Human Services, 858 F.2d 525 (9th Cir. 1988), the Ninth Circuit additionally held that Section 405 barred plaintiffs' state court claims under the Federal Tort Claims Act ("FTCA"), but noted that Jiminez-Nieves v. United States, 682 F.2d 1 (1st Cir. 1982), "is to the contrary," Hooker, 858 F.2d at 530 n.4. This Magistrate Judge does not believe that the holding in Jiminez-Nieves provides a basis for Plaintiff's claims here to proceed. While the First Circuit in Jiminez-Nieves rejected the Government's argument that section 405(g) barred an action for damages based on a tort committed in the course of administering the Social Security Act, the Court noted that the action was "not one for benefits or for negligent denial of benefits." Jiminez-Nieves, 682 F.2d at 3 (internal quotation marks omitted). Here, Plaintifff's claim clearly is for benefits or for the negligent denial of benefits. Thus, Jiminez-Nieves is distinguishable. In addition, to the extent that Plaintiff's claim is based on tort, there is no evidence that Plaintiff has complied with the notice requirements of the FTCA. See 28 U.S.C. § 2675(a); see also Barrett v. United States, 462 F.3d 28, 36-41 (1st Cir. 2006)(explaining notice and exhaustion requirements of FTCA).

at the latest in 2006 which is far beyond the sixty days permitted by section 405(g). Thus, Plaintiff's Second Amended Complaint fails to state a claim upon which relief may be granted. Accordingly, her Second Request for Reconsideration and Application should be denied pursuant to 28 U.S.C. § 1915(e)(2)(B) and her Second Amended Complaint dismissed.

**Conclusion**

For the reasons stated above, I find that Plaintiff's Second Amended Complaint fails to state a claim upon which relief may be granted, and/or it seeks monetary relief against a defendant who is immune from such relief. Accordingly, I recommend that her Second Request for Reconsideration and Application be denied and that this action be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B).[15]

Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of the Court within ten (10)[16] days of its receipt. See Federal Rule of Civil Procedure 72(b); District of Rhode Island Local Rule Cv 72(d). Failure to file specific objections in a timely manner constitutes waiver of the right to review by the District Court and the right to appeal

/s/ David L. Martin
DAVID L. MARTIN
United States Magistrate Judge
May 2, 2008

---

[15] See n.10.

[16] The ten days do not include intermediate Saturdays, Sundays, or holidays. See Fed. R. Civ. P. 6(a)(2).